IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED

02 NOV 19 PM 10: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

THE HEALTH CARE AUTHORITY
OF LAUDERDALE COUNTY AND THE
CITY OF FLORENCE, ALABAMA, d/b/a
COFFEE HEALTH GROUP,

     PLAINTIFF,

vs.

                                        CASE NO. CV 02-J-2675-NW

HEALTHCARE CORPORATION, et al.,

     DEFENDANTS.

**ENTERED**

**NOV 19 2002**

## MEMORANDUM OPINION

This case comes before the court for hearing on the plaintiff's motion for declaration that its claims against defendant Galen Medical Corporation (Galen) are not subject to arbitration (doc. 8) (originally filed May 17, 2002); defendant HCA Inc.'s (HCA) supplemental motion for stay or dismissal (doc. 0) (originally filed in the Circuit Court of Lauderdale County, Alabama; defendant Galen's motion to compel arbitration (doc. 0) (originally filed in the Circuit Court of Lauderdale County) and defendants' motion for stay based upon orders compelling plaintiff to arbitrate (doc. 4).

Before the court heard argument on the pending motions, defendant and Galen filed a notice of withdrawal, without prejudice, of Galen's motion to compel

*19*

arbitration filed in state court (doc. 14), which was docketed as a motion.[1] The

defendants also filed a supplement for clarification to defendants' motion for a stay

(doc. 15), and defendant Galen filed a motion for a protective order (doc. 17).

Defendant Galen also filed an opposition to plaintiff's motion for a declaration

(doc. 16).

With this flurry of pleadings in hand, the court held a hearing on the pending

motions. All parties were present by and through their respective counsel of record

and the court heard argument and received evidence.

### *Factual Background*

On February 26, 2002, the Health Care Authority of Lauderdale County and

the City of Florence, Alabama, d/b/a Coffee Health Group filed a complaint in the

Circuit Court for Lauderdale County, Alabama, against HCA, Inc., Galen Medical

Corp. ("Galen"), Florence Hospital Inc., Medical Center Shoals Inc., Northwest

Medical Center Inc., and fictitious parties.

The case was removed to federal court by defendants on March 25, 2002.[2]

The Notice of Removal alleged that defendant Galen was fraudulently joined by

the plaintiff in an attempt to destroy diversity jurisdiction. Notice of Removal, ¶ 7.

---

[1]This motion is based on defendants' argument that, although the state court could order
the parties to arbitration, this court does not have the authority under the Federal Arbitration Act
to do so.

[2]That action was CV 02-J-754-NW, hereinafter referred to as "the first removal action."

Plaintiff did not filed a motion to remand this case to state court.  On February 27, 2002, HCA, Inc. filed a demand for arbitration with the American Arbitration Association and on March 7, 2002, filed a suit in the United States District Court for the Northern District of Georgia, seeking to compel plaintiff to arbitrate its claims against HCA, Inc.  Defendant HCA, Inc. has consistently argued to this court that its Georgia federal law suit was required pursuant to § 4 of the Federal Arbitration Act and Arbitration Provision ¶12.3(b) of the Asset Purchase Agreement ("APA").

Section 4 of the Federal Arbitration Act provides as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  Five days' notice in writing of such application shall be served upon the party in default.  Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure.  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

Section 12.3(b) of the Asset Purchase Agreement provides as follows:

Except as specifically provided for in paragraph (c) below and elsewhere in this Agreement, all claims and controversies arising out of or in connection with this Agreement shall be subject to binding

3

arbitration by a single arbitrator in accordance with the commercial
arbitration rules of the American Arbitration Association ("AAA") or
the existing Rules of Practice and Procedures of the Judicial
Arbitration and Mediation Services, Inc. ("JAMS").  Any arbitration
shall occur in Atlanta, Georgia, and any judgment on the award
rendered in such arbitration shall be entered in any state or federal
court having jurisdiction.  The party filing the arbitration shall have
the right to select either AAA or JAMS.  The prevailing party in any
arbitration proceeding hereunder as determined by the arbitrator or in
any legal proceedings or actions arising from or in connection with
this Agreement shall be entitled to recover reasonable attorneys' fees
and costs.  Nothing herein shall prohibit a party from seeking
equitable relief in a court of law to maintain the status quo while an
arbitration is pending hereunder.  The parties agree that the arbitrator
shall not have the right to award punitive damages.

HCA, Inc. did not join Galen as a party plaintiff in the Georgia action

seeking to compel arbitration because Galen's participation in said action would

have destroyed jurisdiction in the U.S. District Court for the Northern District of

Georgia as there would have been no diversity.  *See* Memorandum and Order filed

May 30, 2002 in the Chancery Court for the State of Tennessee, 20th Judicial

District, Davidson Co., at 2.

On April 1, 2002, defendant HCA, Inc. filed a motion to stay the

proceedings in this court in the first removal action in an attempt to obtain a

decision from the U.S. District Court for the Northern District of Georgia on the

arbitration issue.   At the hearing in this court on this motion, HCA, Inc. presented

this court with an Order from the U.S. District Court for the Northern District of

Georgia, Hon. Willis B. Hunt, which ordered arbitration of Coffee Health Group's claims against HCA, Inc., but not against Galen.[3]

Thereafter, on May 3, 2002, defendants HCA, Inc. and Galen filed a law suit in the Chancery Court for the State of Tennessee, 20th Judicial District, Davidson County, Part III, requesting the Tennessee court order that Coffee Health Group must arbitrate all of its claims against HCA, Inc., Galen and any other related entity or person arising out of or in connection with the Asset Purchase Agreement.  *See* Memorandum and Order filed May 30, 2002 in the Chancery Court for the State of Tennessee, 20th Judicial District, Davidson County, at 3, filed by Ellen Hobbs Lyle, Chancellor.  In said proceeding, Galen asserted that the Tennessee state court had jurisdiction of Galen, HCA, Inc. and Coffee Health Group; that Galen was a proper party to compel arbitration; and that the text of the arbitration provision of the Asset Purchase Agreement and strong federal policy in favor of arbitration required Coffee Health Group to arbitrate.  *Id.*

In said Memorandum and Order, Judge Lyle stated:

Apparently the reason Galen seeks an order from this Court is contained in a footnote in its papers that the Georgia court's order (as compared to its judgment) suggests that the Georgia court does not yet agree with the position of HCA and Galen that the Georgia federal court does not need jurisdiction over Galen to order Coffee Health Group to arbitrate all of its claims against Galen.  Galen contends that

_____

[3]Judge Hunt's Order stated simply that "HCA's motion to compel arbitration is GRANTED."  Order dated April 22, 2002, at 14.

this court should rule on the motion to compel arbitration "given the uncertainty" created by the Georgia Federal Court.

On May 22, 2002, defendants filed a motion to dismiss Galen or remand the entire case based on this court's lack of subject matter jurisdiction, as well as a motion to stay, in light of the cases pending in Georgia and Tennessee regarding the arbitration of Coffee Health Group's claims against Galen.[4]  Neither Galen nor HCA, Inc. on behalf of Galen filed a motion to compel arbitration of plaintiff's claims against Galen in this court.

On May 30, 2002, the Tennessee Chancery Court declined to rule in the matter of arbitrability of Coffee Health Group's claims against defendant Galen arising out of the Asset Purchase Agreement. *See* Memorandum and Order at 6.

This case is now before this court due to the defendants' removal of this action from state court for the second time.[5]  Also currently pending at this time is HCA and Galen's second action against the plaintiff in the United States District Court for the Northern District of Georgia, in front of Judge Hunt, Civil Action No.

---

[4]Counsel for HCA, Inc. also represents Galen.

[5]At the hearing, the parties requested the court consolidate this case with the previous action, which this court remanded based on the defendants' convincing argument that the court lacked subject matter jurisdiction. *See* CV02-J-754-NW, Memorandum Opinion and Order of Remand, dated June 7, 2002.  The court informed the parties that the court could not consolidate this action with a closed case, especially since the court, finding it lacked subject matter jurisdiction in the CV02-J-754-NW action, ruled that all prior Orders of the court in that action were invalid.  However, with the agreement of the parties, the court did consent to consider all pleadings filed in the previous action.  Thus, no need for refiling of any documents in the CV02-J-754-NW action exists.

1: 02-CV-3049 (attached to plaintiff's motion for expedited hearing (doc. 5) as exhibit 4); the motion for clarification in defendant HCA's first action in front of Judge Hunt, Civil Action No. 1:02-CV-631, as well as the arbitration in front of the AAA panel (see exhibit A to exhibit 4).[6]

### Jurisdiction

Defendants assert this case has been properly removed this time as the plaintiff filed an Amended Complaint on October 25, 2002, in state court which included a federal cause of action, namely RICO violations.  The court considers defendants' posturing of this removal questionable, as defendants requested Judge Hunt in the United States District Court for the Northern District of Georgia in a June 26, 2002 motion for clarification to declare that plaintiff must arbitrate its RICO claims against defendants.[7]  Similarly, prior to an October 14, 2002 hearing in front of the arbitration panel, defendants requested the panel to rule on the arbitrability of the plaintiff's RICO claim.  *See* exhibit A to exhibit 4 of plaintiff's

_____

[6]The motion to clarify was marked during this court's November 18, 2002 hearing as Court's Exhibit 1.

[7]The court mistakenly attributed a statement during the hearing that this was the subject matter and the date of filing of the motion for clarification to the defendants.  The plaintiff actually made these representations to the court during the hearing, which the court then confirmed by obtaining the petition filed with Judge Hunt on June 26, 2002 during the hearing.  The court finds that the plaintiff's representations were a correct factual representation of both the date and the content of the defendants' motion.  The court further notes that the plaintiff informed the court of the content of the motion for clarification pending in front of Judge Hunt after the defendant represented to this court that the motion for clarification concerned the arbitrability of plaintiff's claims against Galen.  *See* HCA's Supplemental Motion for Stay or Dismissal (doc. 0) at ¶ 6, transcript of November 18, 2002 hearing at 6, 17.

motion for expedited hearing (doc. 5).  However, to this court, defendants maintain

that, after this court disallowed the amended complaint containing RICO claims

prior to the original remand, no such federal claims were pending prior to October

25, 2002.  *See e.g*, HCA's Supplemental Motion for Stay or Dismissal (doc. 0) at 3,

n. 2. Thus, the court questions the defendants' veracity in representing to this court

in their Notice of Removal, dated October 30, 2002 that:

> On October 25, 2002, [plaintiff] amended its state court Complaint to
> include allegations that both HCA and Galen had violated the Federal
> Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18
> U.S.C. §§ 1961-1981. (Exhibit C).  As of that date, and for the first
> time, federal subject matter jurisdiction existed based upon the
> presence of a federal question cause of action.

Notice of Removal (doc. 1), ¶ 6.  However, the plaintiff stated in open court and on

the record that it waived any right it may have to move for a remand based on a

question of the timeliness of the removal under 28 U.S.C. § 1446(b).  Thus, this

court finds that this case is properly before it and that this court has jurisdiction to

rule on the merits of the parties' motions.  Therefore, the court finds this action is

properly before it under 28 U.S.C. § 1331 and that no party challenges this court's

jurisdiction.

### *Authority to Decide Arbitrability Questions*

Plaintiff asks this court to declare that its claims against Galen are not

subject to arbitration (doc. 8).  Defendants ask the court to stay this action to allow

arbitration to proceed (doc. 0).  Defendant Galen also requests this court to deny

the plaintiff's motion for declaration that the claims are not subject to arbitration (doc. 16). However, the court can decide none of these issues without actually considering the merits of the parties' arguments as to whether these claims are within the APA. Defendant Galen suggests that the plaintiff tries to "pit this Court against the United States District Court for the Northern District of Georgia, which has already entered a Judgment in the matter and has pending before it all remaining issues of arbitrability raised by Eliza Coffee's Motion. Galen respectfully submits that this court should deny the Motion and defer to the Georgia Federal Court, which, unlike this Court has the authority under the Federal Arbitration Act ("FAA") to grant complete relief to Galen." Galen's opposition at 1-2. This court observes that the sole reason anything is pending in the Northern District of Georgia is due to the defendants' actions. Further, the reason the issue of arbitrability is squarely before this court is due to the defendants' actions. The sole reason the state court did not rule on the issue of arbitrability is due to the defendants' actions. Thus, defendants' claim that the plaintiff is trying to "pit" this court against the Georgia Federal Court lacks credibility.[8] Defendants assert that plaintiff is trying to avoid the "first-to-file" rule, citing *Merrill Lynch, Pierce,*

---

[8]In fact, the court is mystified as to why defendants have twice removed this litigation to this court if they are correct in their assertion that this court is powerless to award the very relief they claim to seek – that being an order that the parties must arbitrate all claims. Perhaps the defendants believe, for whatever reason, that the Georgia Federal Court is more inclined to rule in their favor than the Circuit Court of Lauderdale County, Alabama.

*Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982). Defendants have, apparently, lost sight of the fact that plaintiff sued them, in the Circuit Court of Lauderdale Court, Alabama, and that lawsuit has caused the defendants' prolific filing of lawsuits in a variety of locations. Thus, this court finds defendants' reliance on the "first-to-file" rule misplaced. Even more egregious in defendants' representations to this court is that the issue of arbitrablity has never been raised to this court. Galen's opposition at 6-7. Perhaps those issues have not been raised by defendants, but they certainly have been raised by the plaintiff. This court knows of no reason it can only consider issues raised by the defendants, and will not so constrain itself.

Additionally, the court finds the pendency of a parallel lawsuit not a bar to plaintiff's request that this court determine whether or not the plaintiff must arbitrate. *See* Galen's opposition at 7. Defendants request this court to rule against plaintiff because defendants have been busily scurrying to other courts. Suits filed by defendants **after** the plaintiff originally sued them in Alabama state court cannot bar this litigation under the "first-to-file" rule, nor can they bar this litigation based on parallel litigation in other courts.

Defendants state that plaintiff "[h]aving lost the arbitrability issue as to HCA in the Georgia Federal Court, having been ordered by the Arbitration Panel to arbitrate its claims against Galen, and now facing the likelihood of losing on the

10

issue of arbitrability as to Galen in Georgia Federal Court on all claims, including RICO – Eliza Coffee seeks another bite of the apple by requesting declaratory relief in this Court on the identical issues." Galen's opposition at 8. The court notes that defendants are apparently omniscient, knowing what the Georgia Federal Court will do on a motion that is not yet fully briefed and has not been heard.[9] In fact, HCA argues to this court that "The Federal Court Has Already Determined (or Soon Will Determine) that All Claims Against Galen Are Subject to the APA's Mandatory Arbitration Clause." Galen's Opposition at 10. Furthermore, the court notes the duplicity of this argument, HCA having previously argued to Judge Hunt that Galen was not an indispensible party to the arbitration and the arbitration

---

[9]*See* defendants' Exhibit 1, submitted during the November 18, 2002 hearing. Said Exhibit is the transcription of a voicemail message from Julee Smilley in Judge Hunt's office to counsel for HCA and Galen. That exhibit states that Judge Hunt allowed "the other side to respond by Wednesday, and we will try by Thursday to tell you whether we will either make a ruling on this case and possibly both of them, or let you know if we are going to have a hearing .... So hopefully that will give you a little bit of an idea of what our plan is and you can report that to the Judge over in Alabama on Monday."

could proceed without Galen.[10]  *See* April 22, 2002 Order of Judge Hunt, No. 1:02-CV-631-WBH.

Galen's opposition continues that "Eliza Coffee made the decision that it would seek to litigate its claims despite its obligation to arbitrate.  It must now defend that decision in Georgia Federal Court."  Galen's opposition at 8.  Defendants claim pursuant to § 4 of the FAA that this court cannot consider the question of arbitrability.  Defendants' supplement for clarification to defendants' motion to stay (doc. 15), however, is brought pursuant to § 3 of the FAA, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had ....

---

[10]In spite of defendant's argument to Judge Hunt that Galen was not an indispensible party, and Judge Hunt's finding that "[i]f Galen were before the Court in this matter, diversity would be destroyed and the Court would dismiss the case" (Order of April 22, 2002), defendants argued in this case while it was in state court that Judge Hunt was wrong.  Defendants' Memorandum of Law in Support of their Motion for a Stay of All Proceedings at n. 3 (filed September 23, 2002).  The defendant states "the Georgia Federal Court's ruling that Eliza Coffee's claims against HCA are arbitrable applies equally to Galen.  The Georgia Federal Court stopped short of compelling Eliza Coffee to arbitrate with Galen only because it believed it lacked jurisdiction over Galen since Galen was not a party to that action and if it had been, diversity would have been destroyed ... While HCA believes that the federal court could, without the loss of jurisdiction, order Eliza Coffee to arbitrate against anyone including a party over whom it did not have jurisdiction, the trial court's contrary view does change that fact that it found that the dispute must be arbitrated." *Id.*  Galen argues to this court that "[c]lear from the Georgia Federal Court's holding, therefore, is the fact that Eliza Coffee's claims of fraud and conspiraciy against Galen ***do not*** fall outside the ambit of the APA's arbitration provision ..." Galen's opposition (doc. 16) at 11.

12

The statute itself requires the court to be **"satisfied"** that the subject matter of the proceeding is referable to arbitration before the court can grant the stay.  A determination of exactly that issue is what plaintiff seeks in its motion for declaration.  Thus, the court can find no basis not to consider the merits of plaintiff's motion for declaration that its claims against Galen Medical Corporation are not subject to arbitration (doc. 8).  Proceeding with such consideration, the court finds as follows:

Plaintiff argues that Galen, as a nonsignatory to the APA, has no right to the benefit of the APA arbitration provisions.  Plaintiff's motion for declaration (doc. 8) at 1.  The plaintiff bases this argument on the APA provisions that no third party beneficiaries are intended.  However, this court finds *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir.1999) dispositive of this argument.  In that case, the court stated "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations."  *Id*. at 947, citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  Although arbitration is a contractual right, generally predicated on an express decision to waive the right to trial, the Court has found "certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration.  *MS Dealer Service Corp.*, 177 F.3d at 947, citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-757 (11th Cir.1993).

Another such exception is when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke the arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Service Corp.*, 177 F.3d at 947, citing *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D.Ala.1997).   The Court further explains that equitable estoppel applies when a signatory's claim against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement and also "when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Service Corp.* 177 F.3d at 947. "The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Humana, Inc. Managed Care Litigation*, 285 F.3d 971, 976 (11th Cir.2002).

The court finds that each count of the plaintiff's complaint is based on representations made by the defendants in the sale of the hospitals which is memorialized by the APA.   For example, the plaintiff asserts that:

> [I]n the APA, HCA and Galen, through HCA, also specifically represented that all of the Medicare cost reports for the North Alabama Assets were complete and correct in all material respects. Moreover, HCA and Galen expressly represented that the North

14

> Alabama Assets had not recieved "payment or reimbursement in
> excess of [] the amount provided by Law or any applicable agreement,
> except where excess reimbursement was noted on the cost report."
> (APA § 4.10(a))

Complaint ¶ 31.  The plaintiff asserts that, along with HCA, Inc., defendant Galen

fraudulently induced plaintiff to overpay for the North Alabama Assets and

suppressed numerous facts concerning the true profitability of the North Alabama

Assets.  Complaint, ¶¶ 69-73.  Additionally, plaintiff asserts that defendant Galen

conspired with the other defendants to artificially inflate the North Alabama

Assets' income.  Complaint, ¶¶ 76-80.  Clearly, such claims "raises allegations of

... substantially interdependent and concerted misconduct by both the nonsignatory

and one or more of the signatories to the contract." *MS Dealer Service Corp.*, 177

F.3d at 947.  Plaintiff's claims against HCA and Galen are "based on the same

facts and are inherently inseparable." *Id*. at 948.

　　　Thus, this court is lead to the inescapable conclusion that plaintiff's claims

against Galen are subject to the arbitration provisions of the APA under the

"equitable estoppel" exception, unless compelling such arbitration violates public

policy.  As discussed below, the court questions whether public policy would be

violated in compelling arbitration of plaintiff's punitive damages claim for fraud

against Galen and plaintiff's RICO claims.

### RICO and Punitve Damages

The Supreme Court has ruled that RICO claims are subject to arbitration. *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Additionally, federal policy favors arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 56, 115 S.Ct. 1212, 1215-1216, 131 L.Ed.2d 76 (1995).

However, the arbitration clause at issue here states that "the arbitrator shall not have the right to award punitive damages." APA § 12.3(b). Such limitations on awards by an arbitrator are "precisely the type of arbitration agreement that was found unenforceable in *Paladino*. Such an arbitration agreement prevents [the plaintiff] from obtaining any meaningful relief for his statutory claims."[11] *In re Managed Care Litigation*, 132 F.Supp.2d. 989, 1000 (S.D.Fla.2000). Based on the finding that such a clause prevents a plaintiff from obtaining meaningful relief, that court refused to compel the plaintiff to arbitrate his RICO claims. *Id.* at 1001. The Court further stated that the limitation on punitive damages served as a limitation on the types of statutory claims that may be adjudicated before an arbitrator. *Id.*, citing *Paladino*, 134 F.3d at 1062 ("[T]he arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies"). RICO's treble damages provision are a form of punitive

---

[11]*Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998).

16

damages. *See In re Managed Care Litigation*, 132 F.Supp. at 1001, citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910-11 (3rd Cir.1991). However, a further analysis of *In re Managed Care Litigation* and the affirmance of that opinion in *Humana Inc. Managed Care Litigation,* 285 F.3d 971 (11th Cir.2002), by the United States Court of Appeals for the Eleventh Circuit leads this court to the conclusion that plaintiff's RICO claims in this case are subject to arbitration. In *In re Managed Care Litigation*, the fraudulent scheme alleged "[did] not differentiate between doctors with contracts and those without, and the RICO claims [were] unrelated to any of the contractual relationships that [existed] between the doctors and the HMO's."   *Id.*, 285 F.3d 971, 976-977.  In this case, the amended complaint which raised the RICO claims, is based solely on the contractual provisions of the APA.  The court finds that all actions alleged by plaintiff against defendants which form the basis of plaintiff's RICO allegations presume the existence of an underlying contract between the parties.

Based on the foregoing, the court is of the opinion that the parties must arbitrate the plaintiff's RICO claims.  However, the court has also considered the plaintiff's argument that the provision of the arbitration clause that the "parties agree that the arbitrator shall not have the right to award punitive damage" renders the arbitration clause unenforceable.  Having considered said argument, the court nevertheless reaches the conclusion that plaintiff's RICO claims are

arbitrable, but plaintiff has the right to treble damages, should it prove its RICO claim under 18 U.S.C. § 1964.

The court reaches this conclusion by application of Alabama state law. Alabama law dictates that questions concerning the validity of arbitration clauses are to be decided by the court. *See e.g., Green Tree Financial Corp. v. Wampler*, 749 So.2d 409, 413 (Ala.1999). Thus, the threshold issue of the unconscionability of an arbitration clause is a question for the court and not the arbitrator." *Id.* at 415. The Alabama Supreme Court has stated that "an arbitration clause that forbids an arbitrator from awarding punitive damages is contrary to public policy in Alabama and, thus, is void (citations omitted) .... Thus, an arbitration clause that prohibits an arbitrator from awarding punituve damages is enforceable only if federal law requires that it be enforced." *Cavalier Manufacturing, Inc. v. Jackson*, 823 So.2d 1237, 1246 (Ala.2001), *rev'd on other grounds*, *Ex parte Thicklin*, 824 So.2d 723 (Ala.2002).[12] After reviewing relevant case law, the Alabama Supreme Court concluded that the United States Supreme Court has not addressed the issue, it could find no clear direction on this issue, and therefore Alabama law and public policy were not preempted. *Id.*, at 1247. The court thereafter concluded that a "predispute arbitration clause that

---

[12]In *Thicklin*, the court stated that to the extent *Cavalier Manufacturing v. Jackson* conflicted with the *Thicklin* opinion and *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611 (11th Cir.2001), concerning the disclosure requirements of the Magnuson-Moss Act, *Cavalier* was overruled.

forbids an arbitrator from awarding punitive damages is void as contrary to the public policy of this State ... If parties to an arbitration agreement waive an arbitrator's ability to award punitive damages, the door will open wide to rampant fraudulent conduct with few, if any, legal repercussions .... Thus, we conclude that it is not within the province of the parties to a predispute arbitration agreement to waive a punitive-damages award." *Id.* at 1249.

However, this does not compel this court to strike the entire arbitration agreement or even order the RICO claims be litigated.  This conclusion is reached on the basis that APA contains a severability clause, which states that to the extent anything in the APA is invalid or unenforceable, it shall be considered severed from the APA and the remaining provisions remain in full force and effect.[13]  Faced with a similar clause in *Cavalier*, the court found solely the clause concerning punitive damages to be unenforceable and therefore severed from the remainder of the agreement, leaving the remainder of the arbitration provision in full force and effect. *Cavalier*, 823 So.2d at 1248-49.

---

[13]The defendants have left the court in an awkward situation concerning this clause.  The defendants rely on its existence, and represents to the court that such clause is found in the APA at § 12.11.  Transcript of November 18, 2002 hearing, at 40.  The plaintiff did not dispute that such a clause, or its content, is found in the APA.  However, the parties have not provided the court with a copy of the agreement.  The previous court file, CV 02-J-754-NW, does contain that agreement, but that file is currently before the Eleventh Circuit Court of Appeals based on the defendants' appeal of this court's award of attorney fees to the plaintiff.

Similarly, in *Ex parte Thicklin*, the Court noted that a contract defense generally applicable under state law, such as unconscionability, may be applied to invalidate all or part of an arbitration agreement without contravening the FAA. *Id.,* 824 So.2d 723, 730-31 (Ala.2002), citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).   The Court stated that "it violates public policy for a party to contract away its liability for punitive damages, regardless whether the provision doing so was intended to operate in an arbitral or a judicial forum.  Thus, enforcement of this portion of the arbitration agreement violates public policy ...." *Thicklin*, 824 So.2d at 733, citing *Cavalier, supra*.  Like the Court in *Cavalie*r, the Court in *Thicklin* concluded that "the portion of the arbitration clause in Thicklin's contract that prohibits the arbitrator from awarding punitive damages is void, and we strike only that portion of the clause." *Id.*, 824 So.2d at 734.

Therefore, the court shall sever the clause prohibiting the arbitrator from awarding punitive damages and **ORDERS** the parties to arbitrate the plaintiff's

claims.[14]  Should the plaintiff prevail at arbitration, the arbitrator shall consider

plaintiff's claim for punitive and treble damages.

*Conclusion*

The court having considered the foregoing, it is therefore **ORDERED** as

follows:

The motion to compel arbitration on behalf of Galen (doc. 0) is **MOOT** as

it was withdrawn by defendant's notice of withdrawal, without prejudice, or

Galen's motion to compel arbitration filed in state court (doc. 14).  The Clerk is

directed to redocket document 14 from a "motion" to a "notice."

HCA's Supplemental Motion for Stay or Dismissal (doc. 0) filed in state

court, and defendant HCA's Motion for Stay this litigation in favor of the

arbitration proceeding that has been ordered and begun in Atlanta and is subject

of pending motions in Georgia Federal Court  (doc. 4), are deemed **MOOT** in

light of this court's rulings as set forth above.

Plaintiff's motion for declaration (doc. 8) is **GRANTED IN PART** and

**DENIED IN PART**, as set out above.

---

[14]The court finds the application of New York law by the arbitrator to this case does not
bar the consideration of treble damages under RICO or punitive damages. This court has found
that, under Alabama law, that clause is unenforceable.  Furthermore, the United States Supreme
Court has held that the "best way to harmonize the choice-of-law provision with the arbitration
provision is to read "the laws of the State of New York" to encompass substantive principles that
New York courts would apply, but not to include special rules limiting the authority of
arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties; while
the arbitration clause covers arbitration ..."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514
U.S. 52, 63, 64, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995).

Defendants' Supplement for Clarification to Defendants' motion to stay is (doc. 15) found to be **MOOT.**

Defendant Galen's motion for a protective order (doc. 17) is deemed **MOOT.**

The court shall Order this action dismissed without prejudice to the right of any party to petition for reinstatement following arbitration, should there then remain any unresolved issues. Such reinstatement, if granted, shall cause the status of the parties to revert to the status they held on the date this order is entered, subject to the resolution of any issues in arbitration. By the provision, the court intends that no party will be prejudiced by the court's order entered this date. Each party is to bear its own costs in this action.

**DONE** and **ORDERED** this the ___19___ day of November, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE